UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LOUIS BARBATO and FRANCISCO
RODRIGUEZ, on behalf of themselves and all
other persons similarly situated,

                        Plaintiffs,

    -against-

KNIGHTSBRIDGE PROPERTIES,

                        Defendant.
--------------------------------------------------------------x

**REPORT &
RECOMMENDATION**
14-cv-7043 (JS)(SIL)

**LOCKE, Magistrate Judge:**

Presently before the Court, on referral for Report and Recommendation from the Honorable Joanna Seybert, are Plaintiffs Louis Barbato's and Francisco Rodriguez's (collectively "Plaintiffs" and individually "Barbato" and "Rodriguez") and Defendant Knightsbridge Properties' ("Defendant" or "Knightsbridge") respective motions for summary judgment. *See* Docket Entry ("DE") [53], [54]. By way of Complaint filed on or about December 5, 2014, Plaintiffs commenced this action, on behalf of themselves and all other similarly situated persons, seeking, among other things, unpaid wages and overtime compensation from Defendant Knightsbridge, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq. See* DE [1].

Plaintiffs, who were two superintendents employed by Defendant, seek summary judgment asserting that they are entitled to: 1) unpaid overtime compensation pursuant to the FLSA and NYLL; 2) application of a three-year statute of limitations under the FLSA due to Knightsbridge's willful failure to pay overtime

1

compensation; 3) statutory damages due to Knightsbridge's failure to provide wage statements and notices pursuant to the NYLL; 4) liquidated damages under both the FLSA and NYLL; 5) prejudgment interest under the NYLL; and 6) attorneys' fees pursuant to the FLSA and NYLL. *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Pls. Brief"), DE [54-2], at 1-2. Knightsbridge, in turn, seeks summary judgment asserting that: a) Plaintiff Rodriguez was properly compensated for overtime logged on his timesheets; and b) Plaintiffs Rodriguez and Barbato have failed to establish any uncompensated overtime hours not logged on their timesheets as a matter of law. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Brief"), DE [53-1], at 4. Defendant also moves to dismiss Plaintiff Barbato's claims regarding uncompensated overtime hours logged on his timesheet as moot under Federal Rule of Civil Procedure ("F.R.C.P.") 68, and seeks decertification of the conditional class of superintendents. *See id.* For the reasons stated herein, the Court recommends that Plaintiffs' motion be granted in part and denied in part, and that Defendant's judgment motion be denied, as set forth below. The Court further recommends that Defendant's motion for decertification and its motion to dismiss be granted and denied, respectively.

## I.   Background

### A.   Facts

The following facts are taken from the parties' pleadings, deposition transcripts, declarations, exhibits and respective Rule 56.1 statements of facts. Unless otherwise noted, the following facts are not in dispute.

Defendant is a real estate investment, development, and management firm with interests in eight properties located in New York and one property located in New Jersey (collectively, the "Knightsbridge Properties").[1]  *See* Declaration of Kimberly Thornton ("Thornton Decl."), DE [54-21], ¶ 16.  Defendant currently employs at least one superintendent at each of its New York and New Jersey properties.  *See id.* ¶ 16.  From January 2011 through July 2014, Plaintiff Louis Barbato worked as a superintendent at the Knightsbridge property located at 833 Northern Boulevard, Manhasset, New York.  *See* Plaintiffs' Rule 56.1. Statement ("Pls. 56.1 Stmt.") ¶¶ 2-3.  From October 2005 through April 2014, Plaintiff Francisco Rodriguez worked as a superintendent at the Knightsbridge property located at 1155 Northern Boulevard, Manhasset, New York.  *See id.*; *see also* Defendant's Rule 56.1 Statement ("Def. 56.1 Stmt"), DE [53-1], ¶ 86; *accord* Thornton Decl. ¶ 12. Assuperintendents, Plaintiffs' responsibilities included "janitorial duties, as well as general building upkeep and general maintenance."  *See* Pls. 56.1 Stmt. ¶ 6; DE [54- 1] ¶ 2; Plaintiffs neither supervised employees nor had the power to hire or fire employees.  *See* Compl. ¶¶ 61, 62; *see also* Defendant's Answer ("Answer"), DE [8], ¶¶ 61, 62.

Plaintiffs claim that they regularly worked more than forty hours per week. *See* Pls. 56.1 Stmt. ¶ 8.  According to Barbato, he was often required to work, on average, five hours of weekly overtime.  *See* Deposition Transcript of Louis Barbato ("Barbato Dep.") DE [54-6], at 126:7-127:4.  Barbato testified at his deposition that

---

[1] According to the Complaint, Defendant also has properties in Europe, which are not presently at issue.  Compl. ¶ 11.

he was repeatedly instructed by his supervisors not to enter all the hours he worked onto his timesheets, see *id.* at 58:8-15, 71:7-15, 77:12-23, 120:6-8, and he did not. *See* Pls. 56.1 Stmt. ¶¶ 8-9. Although Barbato's timesheets reflect some hours worked in excess of forty in a given week, he was not paid overtime wages accordingly. *See id.* ¶ 14; Def. 56.1 Stmt. ¶ 112. Rodriguez was also typically scheduled to work over forty hours per week. *See* Deposition Transcript of Francisco Rodriguez ("Rodriguez Dep.") DE [54-7], at 161:12-16; Def. 56.1 Stmt ¶¶ 8, 19. Rodriguez's timesheets were filled out for him in advance, and he was required to sign them before he completed his work each week. *See* Pls. 56.1 Stmt. ¶ 10; Def. Brief at 9. Barbato's regular rate of pay was $19.23 in 2011, $21.63 in 2012, $21.15 in 2013 and $21.63 in 2014. *See* Pls. 56.1 Stmt. ¶ 15. Rodriguez's regular rate of pay was $19.385 in 2008, 2009, 2010, and 2011, $19.676 in 2012, and $19.68 in 2013 and 2014. *See id.* ¶ 16.

According to Plaintiffs, superintendents working at Knightsbridge during the relevant period were classified as exempt employees under the FLSA. *See* Pls. 56.1 Stmt. ¶¶ 12-13. As such, Plaintiffs' state that they were paid their regular hourly rate for up to forty hours, but were not paid for additional hours worked. *See id.* ¶ 14. Former Knightsbridge Assistant Property Manager Kimberly Thornton agrees that Defendant did not pay overtime wages to any superintendents who worked more than forty hours in a given week. *See* Thornton Decl. ¶ 13. Rana Dunn, Knightsbridge's Vice President of Human Resources from 2006 to 2014, states that she pointed out to CEO Jordan Krauss that superintendents, like Barbato and Rodriguez, were misclassified as exempt employees. *See* Affidavit of Rana Dunn ("Dunn Affidavit"),

4

DE [54-18], ¶ 11.  According to Thornton and Knightsbridge's Property Manager and F.R.C.P. 30(b)(6) designee, Rosemary Higuera, Knightsbridge changed its policies in 2014, and no longer classifies superintendents as exempt.  *See* Thornton Decl. ¶ 15; Deposition Transcript of Rosemary Higuera ("Higuera Dep.") at 48:24-51:17. Plaintiffs also assert that neither of them was ever supplied with wage notices required by the New York Labor Law during his tenure at Knightsbridge.  *See* Pls. 56.1 Stmt. ¶ 28; Deposition Transcript of Defendant's F.R.C.P. 30(b)(6) Designee, Susan Hill ("Hill Dep."), at 30:20-22, 34:9-17.

According to Knightsbridge, Plaintiffs were classified as non-exempt employees.  *See* Def. 56.1 Stmt. ¶¶ 5-6, 50-51.  Defendant states that, when originally hired in October 2005, Rodriguez's regular rate of pay was $9.00 per hour and his overtime rate of pay was $13.50 per hour.  *See id.*  Knightsbridge acknowledges that Rodriguez's paystubs only indicate a regular rate of $19.68 for 40 hours of work, but alleges that the paystubs incorporate both a regular and overtime rate of pay. *See* Def. Brief at 21 ("Mr. Rodriguez will argue that his paystubs indicate an hourly rate of $19.68 for 40 hours of work. Yes, he is absolutely correct.").  Specifically, Defendant claims that Rodriguez agreed to a salary that incorporates a regular rate of pay for the first 40 hours of work per week and an overtime rate of pay for the 20 hours thereafter.  *See* Def. 56.1 Stmt. ¶¶49, 52; *see also* Deposition Transcript of Gretchen Beach ("Beach Dep."), DE [53-6], 8:16-12:23.  In support of this agreement, Knightsbridge proffers two "business records," a handwritten note purportedly written by former Knightsbridge property manager Gretchen Beach, and a one

sentence memorandum written by a former Knightsbridge comptroller Frank Mollo. *See* Def. Brief at 19-27; Memorandum of Frank Mollo ("Mollo Memo"), DE [53-17].

As to Plaintiff Barbato, Knightsbridge concedes that Barbato's timesheets indicate that for the three years he was employed by Knightsbridge, he worked a total of 61.5 hours of uncompensated overtime, which is reflected in his timesheets. *See* Def. Brief at 19-27. Further, Knightsbridge contends that Plaintiffs Barbato and Rodriguez have failed to provide specific and sufficient evidence in support of their claims, and are therefore not entitled to, overtime hours not reported in their respective timesheets as a matter of law. *See* Def. Brief at 25-27.

B. <u>Procedural Background</u>

By way of Complaint filed on December 5, 2014, Plaintiffs commenced this litigation, on behalf of themselves and all other similarly situated persons, against Knightsbridge seeking, among other things, the following relief: 1) unpaid overtime compensation and liquidated damages under the FLSA and NYLL; 2) damages for Defendant's failure to supply wage notice statements as required by the NYLL; and 3) attorneys' fees and prejudgment interest. *See* DE [1]. On or about February 3, 2015, Knightsbridge answered the Complaint, denying Plaintiffs' substantive allegations. *See* DE [8].

On or about July 17, 2015, Plaintiffs moved to conditionally certify this action as a FLSA collective action pursuant to 29 U.S.C. § 216(b). On October 8, 2015, the Court granted Plaintiffs' motion and issued an Order conditionally certifying the class and authorizing the posting and circulation of a Notice and Consent to Join.

6

*See* DE [32].  As of this date, however, no additional Plaintiffs have opted in to the collective action.  On June 13, 2016, Knightsbridge and Plaintiffs respectively moved for summary judgment.  *See* DE [53], [54].

## II.   Legal Standard

### A.  Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F.  Supp. 3d

534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party."). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

### B. Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). Notwithstanding, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are

8

inadequate and subject to dismissal.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).

## III.   Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court recommends that Plaintiffs' motion for summary judgment be granted in part and denied in part and Defendant's motion for summary judgment be denied.  At the outset, however, the Court addresses two preliminary issues raised by the parties.

Initially, Plaintiffs take issue with the declarations submitted by Jordan Krauss ("Krauss Affidavit"), CEO of Knightsbridge, and Rosemary Higuera ("Higuera Affidavit"), a Property Manager at Knightsbridge.  Specifically, Plaintiffs assert that the Krauss and Higuera affidavits, which were submitted with Defendant's moving papers, contradict critical prior testimony and should therefore be disregarded. *See* Plaintiffs' Rule 56.1 Response to Defendant's Counterstatement of Facts ("Pls. 56.1 Response"), at 1-2.  The rule in the Second Circuit is well-settled that "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony."  *Trans–Orient Marine Corp. v. Star Trading & Marin*e, Inc., 925 F.2d 566, 572 (2d Cir.1991). The fact that an affiant is not a party will not permit him from defeating a motion for summary judgment by contradicting his or her prior deposition testimony. *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012); *see also Martin v. City of N.Y.*, 627 F. Supp. 892, 896 (E.D.N.Y.1985).  Therefore, to

9

the extent the Krauss and Higuera affidavits contradict their previous deposition testimony, they should be disregarded.

Next, Defendant moves to decertify the conditional class. Plaintiffs concede that no additional plaintiffs have opted-in to the collective action, and, as such, the named Plaintiffs are only "seeking recovery for themselves." *See* Pls. Brief at 2 n.4. Accordingly, further analysis is unnecessary and Defendant's motion to decertify the conditional class should be granted. Having decided these two preliminary issues, the Court now turns to the merits of the parties' respective summary judgment motions and Defendant's motion to dismiss. For the reasons set forth below, the Court recommends that Defendant's motion for summary judgment be denied and that Plaintiffs' motion be granted in part and denied in part. The Court further recommends that Defendant's motion to dismiss be denied.

A. <u>Plaintiffs' and Defendant's Motions for Summary Judgment</u>

1. *Applicability of the FLSA to Plaintiffs' Overtime Claims*

Plaintiffs Rodriguez and Barbato allege that they are owed overtime compensation pursuant to the FLSA for the period of December 5, 2011 through December 5, 2014. *See* Pls. Brief at 2 n.11. Initially, Plaintiffs have met the two prerequisites for an FLSA-based overtime claim by establishing that, under the statute, they qualify as employees of Knightsbridge, and that Knightsbridge is an enterprise engaged in interstate commerce. *See* 29 U.S.C. §§ 206(a), 207(a); *Chen v. Major League Baseball,* 6 F. Supp. 3d 449, 453–54 (S.D.N.Y. 2014) *aff'd sub nom. Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72 (2d Cir. 2015).

### i.    *Employer-Employee Relationship*

Barbato and Rodriguez are entitled to the protections of the FLSA because they have already established, and Defendant concedes, that Knightsbridge was their "employer" under the terms of the statute.  *See* Compl. ¶¶ 20, 24; *see* Higuera Dep. at 29:7-14, 37:4-14.  Under the FLSA, an "employee" is "any individual employed by an employer" who, "as a matter of economic reality," is dependent "'upon someone else's business for the opportunity to render service.'" 29 U.S.C. § 203(e)(1); *Velu v. Velocity Exp., Inc.,* 666 F.  Supp. 2d 300, 307 (E.D.N.Y. 2009) (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.,* 615 F.  Supp. 2d 186, 192–93 (S.D.N.Y. 2009)).  To this end, the Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-05 (2d Cir. 2013) (citation omitted); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016) (applying factors in FMLA context).

Here, Plaintiffs sufficiently establish that Knightsbridge is a covered employer under the FLSA.  Defendant had the ability to hire and fire Plaintiffs, supervised their work schedules, determined their rates of pay, and maintained employment records.  *See* Pls. 56.1 Stmt. ¶ 7; Def. 56.1 Stmt ¶¶ 7, 79.  As a result, the Court concludes that Knightsbridge acted as Plaintiffs' employer within the terms of the statute.

11

### ii.   *Interstate Commerce Requirement*

Once a defendant is classified as an employer, the Court must then determine whether the business is engaged in interstate commerce sufficient to invoke the FLSA.  Specifically, an employer is liable for wage violations under the FLSA "if it hires an employee who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *See Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), (Report and Recommendation), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and has employees that engage in interstate commerce. 29 U.S.C. § 203(s)(1); *Valdez*, 2016 WL 3079028, at *2.   Here, Plaintiffs have demonstrated an interstate nexus based upon Knightsbridge's operation and management of properties outside of New York State.  *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (citing 29 U.S.C. § 206).   Further, Knightsbridge admits that their annual gross volume of sales made or business done is not less than $500,000.  Answer ¶13. Accordingly, Defendant is an employer engaged in interstate commerce and subject to the FLSA.

### iii.    *Non-exempt Employee Status*

Further, Plaintiffs have demonstrated that they held non-exempt positions while employed as superintendents at Knightsbridge.  Though an employee and employer's relationship may meet the FLSA's definitions, a defendant may, nevertheless, escape liability, where any one of the FLSA's exemptions to qualified employees is applicable.  *Chen v. Major League Baseball*, 6 F. Supp. 3d at 453 (citing 29 U.S.C. § 213); *see McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F.  Supp. 2d 383, 387 (E.D.N.Y. 2010) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530 (1986)) ("[T]he issue of whether [an employee's responsibilities] render the employee exempt from the FLSA's overtime provision is a question of law.").  The parties submissions establish Plaintiffs' non-exempt status by explaining that they were building superintendents with no ancillary managerial or supervisory responsibilities, such as hiring or firing other employees.  *See* Pls. 56.1 Stmt.¶ 6. Indeed, Knightsbridge concedes that Plaintiffs held non-exempt positions.  *See* Def. 56.1 Stmt. ¶¶ 78, 110.  Accordingly, the Court further finds that Plaintiffs' positions are non-exempt under the FLSA as a matter of law.  As a result of the foregoing, the FLSA governs Plaintiffs' claims, and they are entitled to overtime for hours worked over 40 in a given week.

### 2. *Applicability of NYLL to Plaintiff's Overtime Claims*

Similar to the FLSA, to recover under the NYLL Plaintiffs must establish that they were "employees" and that Knightsbridge was their "employer" under the statute.  *See Lauria v. Heffernan,* 607 F.  Supp. 2d 403, 407–08 (E.D.N.Y. 2009).  The

NYLL's definitions are substantively similar though slightly broader than those set forth in the FLSA. *See Garcia v. Badyna,* No. 13 Civ. 4021, 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014) (noting that the NYLL does not require a defendant to achieve a certain minimum dollar amount in annual sales or business to trigger liability); *see D'Arpa v. Runway Towing Corp.,* No. 12 Civ. 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting *Santillan v. Henao,* 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)) ("The New York Labor Law 'is the state analogue to the federal FLSA."). Accordingly, if a court has already found liability under the FLSA, it will routinely impose liability under the NYLL. *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("Applying the same reasoning used in the FLSA analysis to the state claims, this Court finds that the undisputed allegations in the complaint and default submissions are sufficient to impose liability on defendants under the NYLL overtime . . . provision[].""). Therefore, as Knightsbridge is an employer under the FLSA, it is similarly an employer under the NYLL. *Cf. Garcia v. La Revise Associates LLC*, No. 08 CIV 9356, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) (quoting *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) ("New York's "employer" provisions are equally broad [as that of the FLSA]."")). Accordingly, Plaintiffs may also recover under the NYLL for overtime pay for hours worked over 40 in a given week.

### 3. *Applicable FLSA and NYLL Statutes of Limitations*

Before calculating the damages due for overtime violations discussed above, the Court must first determine the relevant statutes of limitations. *Cortes v. Warb*

*Corp.*, No. 14-CV-7562, 2016 WL 1266596, at *2 (E.D.N.Y. Mar. 15, 2016), (Report and Recommendation), *adopted by*, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016). (A "determination of damages requires consideration of the applicable limitations under each statute.")

### i.   FLSA

The Court recommends that a three-year, as oppose to a two-year, statute of limitations applies to Plaintiffs federal law claims as the submissions establish that Knightsbridge's conduct constitutes a willful violation under the FLSA as a matter of law. The statute of limitations under the FLSA is normally two years, but extends to three years for willful violations. *See* 29 U.S.C. § 255(a). The Supreme Court has held that a violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1680 (1988). "Reckless disregard" is the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104. "Mere negligence is insufficient." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). "The plaintiff bears the burden of proof on the issue of willfulness for statute of limitations purposes." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (citations omitted). "Courts within this Circuit have generally left the question of willfulness to the trier of fact." *See Ramirez v. Rifkin*, 568 F. Supp.2d 262, 268 (E.D.N.Y. 2008) (citing cases). To establish that an employer acted with reckless disregard, a plaintiff must show only "that the employer knew or had reason to know

that it was or might have been subject to the FLSA." *Eschmann*, 2014 WL 1224247, at *5 (quoting *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 870 (S.D.N.Y. 1984)). Moreover, a defendant may be found to have acted willfully where it failed to pay the plaintiff overtime based on the belief that the plaintiff was exempt under the FLSA. *See Reich v. Waldbaum*, Inc., 52 F.3d 35, 41 (2d Cir. 1995).

Knightsbridge has failed to establish material issues of fact that would preclude a finding of willfulness. Knightsbridge concedes that Rodriguez and Barbato are non-exempt employees. *See* Def. 56.1 Stmt. ¶¶ 78, 110. Knightsbridge's former Vice President of Human Resources Rana Dunn states that she repeatedly advised that Defendant was violating the FLSA, but Knightsbridge failed to act. *See* Affidavit of Rana Dunn, DE [54-18] ¶¶ 5-7. According to Dunn, during her tenure at Knightsbridge, she discovered that the company violated the FLSA with respect to most, if not all, of its employees, and misclassified its superintendent employees, including Barbato and Rodriguez as exempt under the FLSA. *See id.* ¶¶ 9, 11.

In response, Knightsbridge submits an email sent on December 29, 2010, from Rana Dunn, to Chief Executive Officer Jordan Krauss. *See* Email from Rana Dunn, Vice President of Human Resources, to Jordan Krauss (Dec. 29, 2010), DE [53-14], at 6. The email responded to a previous email sent by Krauss and contained an article about the New York Wage Theft Prevention Act ("NYWTPA"). *See id.* According to Knightsbridge, the email demonstrates a lack of willfulness. *See* Def. Brief at 14-15. The Court disagrees. The email does nothing to counter the sworn admissions of Defendant's former Vice President of Human Resources. Accordingly, the Court

16

concludes that Defendant's conduct was willful, and recommends that that the FLSA's three-year statute of limitations applies, covering his claims from April 30, 2012 through April 13, 2015.

### ii.    NYLL

The NYLL imposes a six-year statute of limitations period. *See* N.Y. Lab Law §§ 198(3), 663(3); *Man Wei Shiu v. New Peking Taste Inc.,* No. 11 Civ. 1175, 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014). Therefore, a plaintiff may recover under the NYLL for claims arising beyond the FLSA's three-year limitations period. *See Pinzon v. Paul Lent Mech. Sys. Inc.,* No. 11 Civ. 3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012), (Report and Recommendation), *adopted by,* No. 11 Civ. 3384, 2012 WL 4174410 (E.D.N.Y. Sept. 19, 2012). Barbato worked for Knightsbridge from December 2010 until July 2014. *See* Def. 56.1 Stmt. ¶3. Rodriguez worked for Knightsbridge from October 2005 until April 2014. *See id.* at ¶4. Under NYLL, as the action was commenced on December 5, 2014, all of Barbato's claims are timely, and Rodriguez's actionable period for overtime compensation runs back to December 5, 2008. *See* Pls. 56.1 Stmt. ¶1, Attach. Computation of Damages of Francisco Rodriguez, ("Rodriguez Comp. of Dam.") DE [54-17]; Attach. Computation of Damages of Louis Barbato, ("Barbato Comp. of Dam.") DE [54-16].

### 4.   *Liability under FLSA and NYLL for Failure to Pay Overtime*

Plaintiffs argue that their submissions irrefutably prove that they worked more than 40 hours per week without proper overtime compensation. *See* Pl. Brief at 7. Defendant concedes that Barbato was not paid, and is owed,

overtime. *See* Def. Brief at 28. Accordingly, as liability is established, Barbato is allowed to recover for all hours worked over 40 per week. Knightsbridge, however, cross-moves for summary judgment, arguing that Plaintiffs have failed to establish material issues of fact with respect to the overtime hours not logged in both Barbato's and Rodriguez's respective timesheets and that Plaintiff Rodriguez was compensated for overtime logged on his timesheets. *See id.* at 25-27. In support of the latter argument, while conceding that Rodriguez's paystubs only show a regular rate of pay, Knightsbridge proffers a purported agreement incorporating both a regular and overtime rates of pay for Rodriguez. *See id.* at 19-24.

Here, neither Rodriguez's paystubs, nor Knightsbridge's purported business records, nor the parties' course of conduct, establishes that Rodriguez intended and understood that he contracted with Knightsbridge for his weekly salary to include overtime pay. The "fluctuating workweek method" is the approved method for arriving at the regular hourly rate for overtime purposes in situations where an employee has a "mutual understanding with his employer that he will receive a fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, whether few or many . . . " *Hui Luo v. L & S Acupuncture, P.C.*, No. 14 CIV. 1003, 2015 WL 1055084, at *7 (E.D.N.Y. Jan. 23, 2015) (quoting *Ayers v. SGS Control Servs., Inc.*, No. 03–cv–9078, 2007 WL 646326, at *8 (S.D.N.Y. Feb.27, 2007)). Under the fluctuating workweek method, "the employer and the employee must have a 'clear mutual understanding' that the employer will pay the employee the fixed weekly salary regardless of hours worked." *Seraphin v. TomKats, Inc.*, No. 11–CV–

4382, 2013 WL 940914, at *3 (E.D.N.Y. Mar. 11, 2013) (citing 29 C.F.R. § 778.114);

*see also Berrios*, 849 F. Supp. 2d at 385 (quoting *Giles v. City of N.Y.*, 41 F. Supp. 2d

308, 317 (S.D.N.Y.1999)) ("[A]n employer asserting that an employee's weekly salary

includes FLSA-required overtime payments must prove not just that the employee

regularly works over 40 hours per week, but also that the employer and employee

contracted for the weekly salary to include the overtime period."). "There is a

rebuttable presumption that an employer's payment of a weekly salary represents

compensation for the first 40 hours of an employee's work-week; the burden is on the

employer to rebut this presumption with evidence that the employer and employee

had an agreement that the employee's weekly compensation would cover a different

number of hours." *Jiao v. Shi Ya Chen*, No. 03 Civ. 165, 2007 WL 4944767, at *13

(E.D.N.Y. Mar. 30, 2007) (citing *Giles*, 41 F. Supp.2d at 317). Courts have made clear

that "[u]nless the contracting parties intend and understand the weekly salary to

include overtime hours at the premium rate, courts do not deem weekly salaries to

include the overtime premium for workers regularly logging overtime, but instead

hold that weekly salary covers only the first 40 hours." *Giles*, 41 F. Supp.2d at 317.

As to the pay records, Plaintiffs' argue that their submissions establish that

Rodriguez's paystubs only show a regular rate of pay for 40 hours. *See* Pl. Brief at 7.

Knightsbridge, counters that there was an employee-employer agreement between

Knightsbridge and Rodriguez to the contrary. *See* Def. Brief at 19-27. Because of the

purported agreement, Rodriguez's paystubs, which only show a regular rate of pay,

are inclusive of both a regular and overtime rate of pay. *See id*. In furtherance of

this argument, Knightsbridge submits two purported business records, which allegedly constitute employment agreements. *See id.* According to Knightsbridge, the two documents establish that Mr. Rodriguez was hired in 2005 for a regular rate of pay of $9.00 for the first 40 hours of work, and an overtime rate of $13.50 for hours rendered thereafter. *See id.* Knightsbridge further argues that, even if the business records do not constitute an employment agreement, the Court should infer the terms of the agreement from the parties' conduct. *See id.* In response to these documents, Plaintiffs argue that they are inadmissible hearsay and, assuming that the documents are admissible, they do not constitute valid employment agreements. *See* Pls. Brief at 5-10.

It is undisputed that Rodriguez's paystubs are silent as to an overtime rate of pay. While Rodriguez's timesheets reflect that he worked 65 hours per week, thereby entitling him to 25 hours of weekly overtime compensation, his paystubs state that his rate of pay was based on 40 hours of work. *See* Paystubs of Francisco Rodriguez ("Rodriguez Paystubs"), [54-9]. Indeed, except for a single pay period ending on or about December 15, 2013, Rodriguez was paid the same amount for every week worked. *See id.* As a result, Rodriguez's paystubs fail to establish that his compensation included an overtime premium for hours worked above 40. Therefore, the burden falls on Knightsbridge to proffer an express employer-employee agreement that Rodriguez's weekly salary covers a greater number of hours.

Defendant, however, has failed to proffer a valid employer-employee agreement. Specifically, the record is devoid of any documentary or testimonial

evidence that Knightsbridge ever discussed overtime wages with Rodriguez. Moreover, while Knightsbridge submits two purported "business records," they do not constitute valid employee-employer agreements.

The first purported business record is a handwritten note with various mathematical calculations allegedly authored by Gretchen Beach, a former property manager of Knightsbridge. Plaintiffs argue that the note is inadmissible hearsay that should not be considered for the purpose of this motion, and, in any event, does not constitute an employee-employer agreement. *See* Plaintiff's Memorandum in Opposition of Knightsbridge's Motion for Summary Judgment ("Pls. Opp."), DE [55-1] at 5. Only admissible evidence need be considered in ruling on a motion for summary judgment. *See Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009). According to the Second Circuit, admissibility of a business record under Rule 803(6) "requires both that a memorandum have been 'kept in the course of a regularly conducted business activity' and also that it was the 'regular practice of that business activity to make the memorandum . . . .'" *United States v. Freidin*, 849 F.2d 716, 719- 20 (2d Cir.1988) (quoting Rule 803(6)). These two elements "must be shown by the 'testimony of the custodian or other qualified witness' of the record. *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 187 (E.D.N.Y. 2011) (internal citations omitted). Courts have held that conventional letters, memos, or notes are admissible under the business records exception if they are regularly made in furtherance of the employer's needs and not for the personal purposes of the employee who made them." *See id.* (internal citations omitted).

Applying these standards, Beach sufficiently establishes a proper foundation for the note to be offered into evidence as a business record. Beach testified that her handwritten note was written in the regular course of her job responsibilities and that the note was created at or near the time of the events described. Additionally, while acknowledging certain errors in the underlying mathematical calculations, Beach recognizes her handwriting and testified about the contents of the document. As a result, the note is admissible pursuant to FRE 803(6) as a business record.

The note, however, does not constitute a valid employer-employee agreement as a matter of law. As set forth here, courts have made clear that "[u]nless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours." *Berrios*, 849 F. Supp. 2d at 385. Defendant has submitted no evidence that Rodriguez understood the note to calculate a wage agreement between the parties. Beach testified that she could not specifically remember authoring the note and had no recollection of going over the note with Rodriguez. *See* Beach Dep. at 7:9-13, 30:4-13, 34:22-35:16. Rodriguez testified that he never agreed to this rate of pay and that he was never presented with the document. *See* Rodriguez Dep. at 66:18-67:16. As a result, the note fails to document that Rodriguez understood that his weekly salary to include pay for overtime hours.

The second purported business record is a one sentence long memorandum prepared by a Frank Mollo, a former comptroller at Knightsbridge Properties. The

memorandum, dated January 9, 2006, states "[a]s per our discussion [redacted name] and Francisco Rodriguez are to receive $9.25 for there [sic] first 40 hours and $13.88 for there [sic] additional 26 hours week.  This compensation adjustment is effective as of January 9, 2005."  *See* Mollo Memo, DE [53-17].

The memorandum is inadmissible.  Knightsbridge has failed to produce a custodian or qualified witness to testify that the memorandum was 'kept in the course of a regularly conducted business activity' and also that it was the regular practice of that business activity to make the memorandum.  The memorandum itself contains a hearsay statement about a prior discussion about Rodriguez and an undisclosed third party.  Moreover, assuming that the memorandum was admissible, it fails to establish that Rodriguez understood or intended that his weekly salary incorporate overtime pay.  Specifically, the memorandum is not directed to Rodriguez, refers to an alleged "discussion" between Mollo and an undisclosed third party, fails to explain whether any conversation occurred with Rodriguez, and contains no reference to an agreement or understanding with Rodriguez as to his rate of pay rate.

Finally, Knightsbridge relies on *Giles v. City of New York* in arguing that the Court should infer an overtime rate of pay based on the parties' conduct.  The case stands for the opposite proposition.  *See* 41 F. Supp. 2d at 308.  Specifically, *Giles* recognizes that absent an agreement that is intended and understood by an employee to incorporate overtime pay, there is a presumption that an employee's weekly salary only covers 40 hours.  Nevertheless, examining the parties' conduct does not support Knightsbridge's claim of an agreement.  Specifically, there is one instance in which

either Plaintiff received payment for work beyond 40 hours in a week.  On or about December 15, 2013, Plaintiff Francisco Rodriguez worked an additional three hours on Sunday.  *See* Pls. 56.1 Stmt. ¶ 19.  It would, therefore, follow that Rodriguez would be paid three hours of overtime wages by Knightsbridge.  Rodriguez, however, received an additional payment in the amount of $59.03 for those additional hours.  *See id.* ¶ 20; *see also* Rodriguez Pay Stub for December 31, 2013, DE [54-15].  $59.03 divided by three hours of work amounts to $19.68 per hour, which as Plaintiffs allege, was Rodriguez's regular rate of pay.  *See* Pls. 56.1 Stmt. ¶ 20.  Moreover, $19.68 is neither consistent with Knightsbridge's alleged regular or overtime rates of pay for Rodriguez.  As such, Knightsbridge's course of conduct, in paying Rodriguez a regular rate of pay for three additional hours of overtime on a single occasion fails to support Knightsbridge's argument as to the existence of an agreement.

Finally, Defendant argues that because we "know" what Rodriguez originally made in 2005, what he was paid from 2008-2014 "falls into place."  *See* Def. Brief at 10.  However, as detailed above, Defendant's submissions do not establish an agreement for Rodriguez's regular and overtime rates of pay.  As a result, Defendant's purported 2005 agreement cannot be extrapolated to the actionable period of 2008-2014.  Accordingly, Rodriguez is entitled to unpaid overtime compensation for his work above 40 hours in a given week as a matter of law.

### 5. *New York Notice and Wage Statement*

Plaintiffs also move for summary judgment on the basis that Knightsbridge failed to provide wage and hour notices pursuant to New York law.  Under the NYLL,

employers must provide employees with wage and hour notices. NYLL §195(1)(a). The notices must, *inter alia*, inform the employee of his or her regular rate of pay. *See id.* Employees must be provided such notices at the time of hiring and on or before February 1st of each subsequent year of employment. *Id.* An employee who does not receive such notices can recover damages of $50 per week, up to a statutory maximum of $2,500. NYLL §198(1-b). Similarly, employers are also required to provide wage statements with each payment of wages, which must include, *inter alia*, the rate of pay and basis thereof. NYLL §195(3). An employee who does not receive such statements can recover $100 per week of violation, up to a maximum of $2,500. NYLL §198(1-d).

Defendant is liable for failure to provide the wage notices (NYLL §195(1)), and wage statements (NYLL §195(3)), each in the amount of $2,500 per Plaintiff. NYLL §§198(1-b), 198(1-d). Defendant admits that it never provided Plaintiffs with written notices or statements of wages. *See* Hill Dep. at 30:20-22, 34:9-17; *see also Cuzco v. F & J Steaks 37th St, LLC*, 2014 U.S. Dist. LEXIS 72984, **10-12 (S.D.N.Y. May 28, 2014). While Knightsbridge did not address Plaintiffs' allegations regarding written wage notices in their opposition, they did belatedly address the issue in their reply brief. *See* Defendant's Reply in Further Support of Knightsbridge's Motion for Summary Judgment ("Def. Reply"), DE [58], at 3-6. However, arguments raised for the first time in reply briefs need not be considered. *See, e.g., EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007); *Cotona v. Fed. Bureau of Prisons*, 2013 U.S. Dist. LEXIS 144988, 2013 WL 5226238, at *2

(S.D.N.Y. Oct. 7, 2013) ("[A]rguments raised for the first time in a reply memorandum are waived and need not be considered."). Here, both Rodriguez and Barbato establish, and Defendant does not dispute, that their wages changed after April 9, 2011 and no wage notices were ever provided in any event. *See* Pls. 56.1 Stmt. ¶¶10, 15. Accordingly, summary judgment as to this cause of action is appropriate, and Knightsbridge is liable in the total amount of $5,000 to each Plaintiff for violations of NYLL § 195(1)(a) and § 195(3).

B.  <u>Defendant's Motion to Dismiss</u>

In addition to its motion for summary judgment, Knightsbridge argues that Barbato's claims as to overtime wages should be dismissed because they are moot due to Defendant's Fed.R.Civ.P. 68 Offer of Judgment. *See* Def. Brief at 28-29. Rule 68 provides, in part, "[a]t any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued." Importantly, "[i]f the judgment finally obtained by [plaintiff] is not more favorable than the offer, the [plaintiff] must pay the costs incurred after the making of the offer." The "plain purpose of Rule 68 is to encourage settlement and avoid litigation.... The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." *Marek v. Chesny*, 473 U.S. 1, 5, 105 S.Ct. 3012, 3014 (1985).

According to the Supreme Court, and contrary to Defendant's position, "[u]nder basic principles of contract law, [a] settlement bid and Rule 68 offer of judgment, once rejected, ha[s] no continuing efficacy." *Campbell-Ewald Co. v. Gomez*, —— U.S. —— , 136 S. Ct. 663, 665 (2016). Rather, absent acceptance, the Rule 68 offer "remain[s] only a proposal, binding neither [Plaintiff] nor [Defendants]." *Id.* at 670. Once Plaintiff rejected Knightsbridge's offer of judgment, Plaintiff "gained no entitlement to the relief [Defendants] previously offered." *Id.* "In short, with no settlement offer still operative, the parties remain [ ] adverse; both retain[ ] the same stake in the litigation they had at the outset." *Id.* Therefore, "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.* at 672; *Cortes v. Mako Sec., Inc.*, No. CV 15-2819, 2017 WL 2333625, at *2 (E.D.N.Y. May 30, 2017) ("Under the Supreme Court's very clear and definitive holding in *Campbell–Ewald*, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case.") (internal citations omitted). Accordingly, Knightsbridge's Offer of Judgment does not moot Barbato's claims, and the Court recommends that Knightsbridge's motion to dismiss be denied.

### C. Damages

Having determined Knightsbridge's liability for unpaid overtime, the Court turns to the question of damages. In addition to unpaid overtime wages, Plaintiffs seek compensatory damages, liquidated damages, prejudgment interest, and leave to file a motion for attorneys' fees and costs. *See* Compl. ¶8.

1. *Compensatory and Statutory Damages*

Plaintiffs seek compensatory damages for their overtime claims under the FLSA and NYLL. "[P]laintiffs may not recover under both the FLSA and NYLL for the same injury," but can "recover under the statute that provides for the greatest relief." Eschmann, 2014 WL 1224247, at *7. Therefore, the Court may award only one set of compensatory damages. *See Jin M. Cao v. Wi Liang Lexington Rest., Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) ("Although plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor Law, they may not recover twice."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 n.15 (E.D.N.Y. 2015) ("Plaintiffs may not recover for unpaid wages under both statutes . . . ."). As some of Rodriguez's claims are time-barred under the FLSA, the Court calculates Plaintiffs' compensatory damages under the NYLL. Pursuant to the implementing regulations of the NYLL, similar to the FLSA, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179, 2014 WL 988835, at *7 (E.D.N.Y. Mar. 12, 2014).

### i. *Rodriguez's Unpaid Overtime Wages*

The conflicting accounts as to the amount of overtime hours worked by Rodriguez create material issues of fact sufficient to deny summary judgment and proceed to trial on the issue of damages. If documentation by the employer is inadequate, inaccurate, or absent altogether, an employee can sustain his burden by

giving the fact finder "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192 (1946); *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31-32 (2d Cir. 2002). A Plaintiff may meet this burden solely through his or her own recollection. *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp.2d 381, 388 (E.D.N.Y. 2007). If the court finds the testimony credible, it can award damages based on an approximation of the employee's loss. *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997). However, at the summary judgment stage, "[i]n reviewing the evidence and the inferences that may reasonably be drawn, the court may not make credibility determinations or weigh the evidence." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Here, Rodriguez testified that he worked at least 65 hours per week throughout the actionable period. *See* Rodriguez Dep. at 161:12-16. Knightsbridge, in contrast, concedes that Rodriguez worked 60 hours, which includes 20 hours of unpaid overtime, per week, but denies any additional hours. *See* Def. 56.1 Stmt ¶¶ 8, 19, 66. Therefore, due to the conflicting accounts, the Court declines to recommend a specific amount of damages for Knightsbridge's overtime violations as to Rodriguez. Accordingly, the Court recommends that summary judgment be denied as to Rodriguez on the issue of damages as material issues of fact remain as to the amount of damages, which shall be addressed at trial.

### ii. *Barbato's Unpaid Overtime Wages*

There are also material issues of fact as to the amount of overtime that Plaintiff Barbato is owed sufficient to deny summary judgment and proceed to trial on this issue.  Barbato alleges that he worked 45 hours per week throughout his tenure at Knightsbridge.  *See* Pls.s 56.1 Stmt. ¶ 8.  His timesheets, however, only show a total of 61.5 hours of overtime, s*ee* Timesheets of Louis Barbato ("Barbato Timesheets"), DE [54-8], at 2-6, that Knightsbridge acknowledges it did not pay. *See* Def. Brief at  15.  Plaintiffs allege that Barbato was "repeatedly instructed by his supervisors to not log his overtime hours on his timesheets," *see* Pls. 56.1 Stmt. ¶ 9, and as a result, the timesheets are not reliable.  *See* Pls. Brief at 14.  Nevertheless, Barbato estimates at his deposition that he logged 85% of his overtime on his timesheets, which would limit his unpaid overtime total to 72.35 hours.  *See* Def. Brief at 15.[2]  Accordingly, based on the record, the Court cannot conclude, as a matter of law, the amount of overtime wages that Barbato may be owed.  Accordingly, the Court also declines to recommend a specific amount of damages for Knightsbridge's overtime violations as to Barbato, and this issue should be revisited at trial.  Because other facets of damages, *e.g.*, liquidated damages and prejudgment interest, rely on this calculation, the Court need not extend an analysis on damages beyond this point.

---

[2] Plaintiffs argue that Barbato's testimony reveals "a fundamental misunderstanding of what constitutes overtime." *See* Pls'. Brief at 6.  Specifically, Barbato testified "that, regardless of hours, he only considered work outside of his ordinary duties, and beyond his scheduled hours, as overtime." *Id.* Moreover, there is an internal conflict between Barbato's testimony that he worked approximately 5 hours of overtime every week, with his testimony that he logged 85% of his overtime hours.

### 2. *Attorneys' Fees and Costs*

Finally, Plaintiffs request leave to move for attorneys' fees and costs "if it is determined by the Court that Plaintiff is entitled to damages." *See* Compl. 8.; Pls. Brief at 19-20. As the Court has determined that Plaintiffs are entitled to damages, it is respectfully recommended that Plaintiffs be granted leave to submit a motion for attorneys' fees and costs under the FLSA and NYLL at the appropriate juncture. *See* 29 U.S.C. § 216(b) ("The court in such [FLSA] action shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 198(1-a) ("In any [NYLL] action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover . . . all reasonable attorney's fees . . . ."); *Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 15-cv-2158, 2015 WL 5710320, at *10 (S.D.N.Y. Sept. 25, 2015) ("Under the FLSA and NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."). Because the Court recommends that a trial be held to determine damages, the motion for attorney's fees should be submitted after the trial is concluded.

## IV.   Conclusion

Based on the foregoing, the Court respectfully recommends that Defendant's: (i) motion for summary judgment be denied; (ii) motion for decertification be granted; and (iii) motion to dismiss be denied. The Court further recommends that Plaintiffs' motion for summary judgment be granted in part and denied in part. Specifically,

the Court recommends that Plaintiffs' motion be granted as they are entitled to: (i) a three-year statute of limitations under the FLSA due to Knightsbridge's willful failure to pay overtime compensation; (ii) unpaid overtime compensation pursuant to FLSA and NYLL; and (iii) $5,000 in damages each to both Rodriguez and Barbato due to Knightsbridge's failure to provide wage statements and notices pursuant to NYLL; and (iv) attorneys' fees under the FLSA and NYLL.  Finally, the Court recommends that summary judgment be denied as to the issue of damages as material issues of fact remain as to the amount of damages owed to Plaintiffs, which should be determined at trial.

## V.    Objections

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
          August 7, 2017                                    **SO ORDERED**

                                                             s/ Steven I. Locke
                                                            STEVEN I. LOCKE
                                                            United States Magistrate Judge